# Philip L. Theobald, Adm'r, v. Chicago, Milwaukee & St. Paul Ry. Co.

1. CHANGE OF VENUE—*A Petition for, Held Not Properly Verified.*—A petition for a change of venue stated that the petitioner "represents" certain facts to the court, but contained no allegation that the things represented were true; attached to such petition was a jurat as follows: "Subscribed and sworn to before me * * *." *Held*, that the requirement of the statute that petitions for change of venue be verified by the affidavit of the applicant had not been complied with.

2. SAME—*Waived by Going to Trial Without Objection.*—Where, by stipulation filed five months after a petition for a change of venue has been denied, the parties submit the cause to hearing before the judge from whom the change of venue was asked, alleged errors in overruling the application for change of venue must be regarded as waived.

3. AFFIDAVITS—*Jurat Defined.*—A jurat is that part of an affidavit where the officer certifies that it was sworn to before him; it is not the affidavit.

4. RAILROADS—*Gates at Crossings—When Condition of, is Immaterial.*—Gates are put at railroad crossings to give warning that trains are passing or are about to pass, and when a passer-by sees the train itself going in front of him he has all the warning the gates can give and their condition is immaterial.

5. SAME—*Duty of Engineer as to Persons Standing near the Track.*—It can not be said that an engineer is negligent who sees a boy nearly nine years old standing in a place of safety near the track, because he does not stop or slacken the speed of his train or blow a whistle, when his bell is ringing and crossing gates located at such place are down, nor must he assume that such a boy will not take the ordinary and reasonable precaution of looking both ways before he steps upon the track, or that the boy is in fact ignorant of the approach of the train.

6. SAME—*Duty of Persons about to Cross a Railroad Track.*—It is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track, but to take the proper precautions to avoid accidents.

7. SAME—*Notice to Train Crews of Necessity for Unusual Precautions to Avoid an Accident.*—Where it appears that a person standing near a railroad track did not distinguish the noise made by an approaching train from other noises, in order to charge the train crew with negligence in failing to take appropriate steps to prevent an accident, it is necessary to prove notice of the facts to the train crew at least long enough before the accident to have enabled them to have formed an intelligent opinion as to how it might be avoided and to apply the means.

Theobald v. C., M. & St. P. Ry. Co.

' **Trespass on the Case.**—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. John Barton Payne, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1897. Affirmed. Opinion filed April 8, 1898.

## Statement of the Case.

The deceased, John J. P. Theobald, was a boy aged eight years and eight months at the time of the accident which caused his death. He was living with his parents on Division street, Chicago, a little east of the intersection of Division and Halsted streets with the right of way of the Chicago, Milwaukee and St. Paul Railway Company. The point where the double tracks of the railway company cross is the center of the two streets. The boy lived with his parents, within about 125 feet of the place where he was killed, for nearly eight years. His father stated that he had read to him newspaper accounts of accidents and had " explained to him to be careful." The boy was of average intelligence and of average size for his age. The 5th of April, 1892, about half after six o'clock in the evening, he had been playing with other boys in a stone yard situated at the southwest corner of Division and Halsted streets. Being told by a companion that his sister was calling him, the deceased started to go home. Trains were then approaching the crossing from opposite directions. The crossing gates were down and the tower bell ringing. The train coming from the southeast was running upon the eastward of the double tracks of the railway company. As it crossed the street in front of him, the boy was standing apparently at a point near the northwest corner of Division street and the railroad right of way, not more than six or eight feet from the westward of the two tracks, watching this train which was passing upon the eastward or further track. Meanwhile a train was approaching from the northwest upon the track nearest to where he was · standing. This train was in plain sight from where the boy stood for a long distance before it reached him, but he evidently did not look in that direction· and did not see it. The engine of this south bound train is stated by one of the engineers

to have been about two or three coach lengths north from Division street when the engine of the north bound train was at the center of that street. When the rear end of the north bound train passed where the boy was standing, apparently waiting for it to go by, he was seen to step forward suddenly upon the track nearest him, and directly in front of the south bound train. It was running with the tender in front, and its engine bell was ringing. The corner of the tender struck the boy upon the head. He was apparently carried or thrown about twenty feet and fell near the center of Division street on the west side of the train which had struck him.

At the conclusion of the defendant's testimony, the trial court instructed the jury to find the defendant not guilty.

Munson T. Case, Case & Hogan and W. P. Black, attorneys for appellant.

Charles B. Keeler, attorney for appellee; Geo. R. Peck, of counsel.

Affidavits will not be allowed to be read in support of a motion, if taken before an attorney in the cause. Taylor v. Hatch, 12 Johns. 340; Willard v. Judd, 15 Johns. 531; Hallenback v. Whitaker, 17 Johns. 2; Vary v. Godfrey, 6 Cow. 587; Den v. Geiger, 9 N. J. Law (4 Halstead), 225.

An affidavit for an attachment, or for probating a mortgage, can not be taken by a party before his attorney who is a notary public. Wilkowski v. Halle, 37 Geo. 678; Nichols v. Hampton, 46 Geo. 253; Glanton v. Griggs, 5 Geo. 429.

The court will in no case issue attachment against a party, at suit of another, where the affidavits on which the motion is founded are sworn to before the agent of the prosecutor. King v. Wallace, 3 Term Repts. (Durnf. & E.) 403; Jenkins v. Mason, 3 Moore, 325.

"It is extremely wrong for the attorneys in a cause to act as commissioners in taking the affidavits of their clients." Hopkinson v. Buckley, 8 Taunt. 74.

"By the general practice of all the courts affidavits sworn

before the attorney or solicitor in the cause can not be read." Tidd's Practice, 494; 3 Dan. Chy. Prac., 234.

"Affidavits taken before a person who is a solicitor in a cause are not allowed to be read, either at law or in equity; nor can affidavits be received which are sworn to before the attorney of the party." 1 Bac. Abr. 147.

On the same principle a party in interest can not take an acknowledgment of a deed or mortgage as notary. Hammers v. Dole, 61 Ill. 307; West v. Krebaum, 88 Ill. 263.

Gates are only one means of notifying travelers of the approach of trains. If the gate bell is rung or the engine bell is rung, or bystanders call out a warning, or any other proper notice is given, that is sufficient. Wilson v. New York, N. H. & H. R. Ry. Co. (R. I.), 29 Atl. Rep. 302; State v. Baltimore & Ohio Ry. Co. (Md.), 14 Atl. Rep. 687; Pakalinsky v. New York, C. & H. R. R. R. Co., 82 N. Y. 427; Cleveland, C., C. & I. R. R. Co. v. Elliott, 28 Ohio St. 350; Walker v. Kinnare, 76 Fed. Rep. 106; Cincinnati, I., St. L. & C. Ry. Co. v. Long (Ind.), 13 N. E. Rep. 664; McManamee v. Missouri P. Ry. Co. (Mo.), 37 S. W. Rep. 119.

"The ringing of the bell or sounding the whistle, is but for the purpose of giving notice of the approach of the train. If the traveler on the highway has such notice otherwise, in season to avoid a collision upon the crossing, the object of ringing the bell or sounding the whistle is subserved, and the failure to perform said acts, or either of them, can not be held to be the cause of an injury which may result from such collision." Chicago, R. I. & P. R. R. Co. v. Bell, 70 Ill. 107; Lake Shore & M. S. Ry. Co. v. Sunderland, 2 Ill. App. 312.

The courts uniformly hold than an engineer who sees a pedestrian approaching the unobstructed crossing, has a right to assume that he will stop before going upon the track, and hence he is not required to check the speed of his train until he actually knows that they do not intend to do so. Chicago, B. & Q. R. R. Co. v. Lee, 68 Ill. 576; St. Louis, A. & T. H. R. R. Co. v. Manly, 58 Ill. 300; Chicago, R. I. & P. Ry. Co. v. Austin, 69 Ill. 426; Toledo, W. & W.

Ry. Co. v. Jones, 76 Ill. 311; Chicago, B. & Q. R. R. Co. v. Damerell, 81 Ill. 450.

In this case the plaintiff must prove knowledge by the engineer or fireman of Theobald's sudden movement toward the track " at least long enough before the injury was inflicted, to have enabled them to have formed an intelligent opinion as to how the injury might be avoided and apply the means." Chicago, B. & Q. R. R. Co. v. Johnson, 103 Ill. 520.

Mr. Justice Freeman, after making the above statement, delivered the opinion of the Court.

Appellant's first assignment of error is that the trial judge refused to grant the application for a change of venue. The issues had once been tried before another judge of the Superior Court with a jury, and a verdict rendered in favor of the administrator, which was set aside and a new trial granted. February 18, 1896, the case was announced for trial the day following, before the Hon. John Barton Payne, who took up on the 18th the calendar of another judge. At 2 p. m. of that day appellant's counsel presented a petition for change of venue. The petition was taken under advisement by the court until the next day, when appellant's counsel asked leave to file an additional petition, which was finally allowed to be done, the court holding, however, that appellant had no right to amend. The original petition represented that the judge was prejudiced, and attached to it is the following jurat: " Subscribed and sworn to before me this 18th day of February, A. D. 1896. Munson T. Case, Notary Public." The notary was and is of counsel for appellant. No seal is attached, and there is no venue to the petition. The additional petition filed the next day, February 19th, was identical with the original, except that it shows the venue, and the jurat is subscribed by another notary, not of counsel in the case, and the record indicates that a seal was attached.

The statute requires that " every application for a change of venue shall be by petition, setting forth the cause of the

application and praying for a change of venue, which petition shall be verified by the affidavit of the applicant." Rev. Stat. Chap. 146, Sec. 3.

The affidavit is an essential requirement.

In Barrows v. The People, 11 Ill. 121, the affidavit states that the petitioner " being duly sworn according to law, deposes and says that the facts set forth " in his petition are true. The court held him entitled to the change. The provision of the statute as to the affidavit was the same as it is now. In Schlump v. Reidersdorf, 28 Ill. 68, the court, by Chief Justice Caton, says: " The statute regulating proceedings for a change of venue, requires a petition and an affidavit stating the truth of the facts relied upon to sustain the petition." In Commercial Ins. Co. v. Mehlman, 48 Ill. 313, it is said that the petition was subscribed and sworn to by the secretary of the company, " who stated in his affidavit " certain facts. In Bouvier's Law Dictionary, title " Affidavit," it is said that to constitute a formal affidavit, " the deponent must sign the affidavit at the end," or his name must appear therein as the person who took the oath.

In this case neither the original nor the additional or amended petition pretended to be an affidavit. It does not even appear that the petitioner is the person who swore to his petitions.

There is a recital in the petition that the petitioner " represents " certain things to the court, but no allegation that the things represented are true, and the jurat does not help out the petition in this respect. A jurat is merely that part of an affidavit where the officer certifies that it was sworn before him. (Bouvier's Law Dic., title " Jurat.") It is not the affidavit. Inasmuch, therefore, as the petition was not verified by the affidavit of the applicant, it was fatally defective, and the application for change of venue was properly denied.

In view of what has been said, it is unnecessary to consider other errors alleged to have been committed in the proceedings relating to a change of venue. It may be said,

however, that the record shows that, standing upon the refusal of the application for change of venue, appellant declined to offer any evidence before the jury called to try the issues. Thereupon the court directed a verdict for appellee, and appellant thereupon moved for a new trial. By stipulation filed five months after, a new trial was granted, and as per the stipulation the cause was " specially assigned and set for trial before the Honorable John Barton Payne," and the trial from which this appeal is prosecuted was had in accordance with that stipulation.

This brings the case within the ruling of the Supreme Court in Noyes v. Kern, 94 Ill. 521, and was a waiver of any alleged error by the trial judge in previously overruling the application for a change of venue.

It is urged that the Superior Court erred in taking the case from the jury, instructing them to find the defendant not guilty. It is said that there was evidence tending to prove the cause of action, and that it was the duty of the court, therefore, to refuse an instruction of that character, and leave the jury to pass upon the weight of the evidence.

Our attention is called to the conflict in testimony as to whether the deceased left the sidewalk and passed within the gates from the southwest corner of Division and Halsted streets, or whether he crossed to the north side of Division street first, and then eastward to the point where he was seen standing just before he was struck. This is claimed to be material, because there is some evidence to the effect that the gate arm on the southwest corner, which extended over the sidewalk at that point, was broken off; and that hence if the boy passed within the gate there, he might have done so without having his attention called to the fact that the gates were down. It is urged that the broken arm, to which it is said appellee's attention had been called, tended to prove negligence on the part of the company. The evidence largely preponderates in favor of appellee, both to the effect that the boy did not go within the gates at the place where it is alleged the gate arm was broken, and also to the effect that it was not so broken.

But it is undisputed that the boy was standing inside the gates watching a train going by before his eyes. Under these circumstances the condition of the gate arm at that time was not material. The gates are put there to give warning that trains are passing or about to pass. When a passer-by sees the train itself going in front of him, he has all the warning the gates can give.

In the case of Chicago, R. I. & P. R. R. Co. v. Bell, 70 Ill. 102, it is said: "It is the general rule, that it is deemed culpable negligence to cross the track of a railroad without looking in every direction that the rails run, to make sure that the road is clear. * * * The ringing of the bell or sounding the whistle is but for the purpose of giving notice of the approach of the train. If the traveler on the highway has such notice otherwise, in season to avoid a collision upon a crossing, the object of ringing the bell or sounding the whistle is subserved, and the failure to perform said acts or either of them, can not be held to be the cause of an injury which may result from such a collision."

Such gates are not usually so constructed as to make it impossible for a boy to get under or around them. It is difficult to see what possible bearing the condition of the gate arm could have had upon this accident. The boy was familiar with the locality and knew the situation and use of the gates. He was in daily association with the conditions existing there, was playing back and forth across the tracks, and had been warned by his father to be careful. The condition of the gate arm was not so material to the issues as to require it to be submitted to the jury.

It is further said that there is conflicting evidence as to the speed at which the train which struck the boy was moving. This conflict is as to whether the train was moving at a rate of six miles an hour or at the rate of from fifteen to twenty miles. Here, also, the testimony preponderates in favor of appellee. But in view of the undisputed fact that the boy did not look in the direction of, and did not see the south bound train, and stepped immediately in front of it, or so near it as to be struck on the head by

the corner of the tender, we can not regard appellant's testimony as to speed, accepting it as true, as tending to prove negligence such as to impose liability upon appellee.

It is said there was a conflict of evidence as to whether a headlight was burning upon the south bound train. But it was still daylight, and it is immaterial whether the headlight was burning or not.

It is said that as no whistle was sounded, the question of appellee's negligence in this respect should have gone to the jury. It appears that the engineer was on the left side of his engine, and did not see the boy, who was standing on the other side of the track. The fireman on the right side of the engine did see the boy while still more than 250 feet away. The boy was then "standing six or eight feet from the track, watching the north bound train, waving his hand." There is nothing in this record tending to show there was anything in the boy's position or attitude to indicate that he would step forward in front of the oncoming train. Had he been standing upon the track, instead of six or eight feet away from it, the situation would have been different. But can it be said that an engineer or fireman is negligent who sees a boy nearly nine years old standing in a place of safety near the track, because he does not stop or slacken the speed of his train or blow a whistle when his bell is ringing and the crossing gates are down? Must he assume that such a boy will not take the ordinary and reasonable precaution of looking both ways before he steps upon the track, or that the boy is in fact ignorant of the approach of the oncoming train? We think not.

In this case the fireman saw the boy step forward. The head of the train was then a few feet north of Division street, as the evidence tends to show, and not more than ten or fifteen feet from the boy. The fireman "yelled" to the boy and shouted to the engineer to "whoa up." The engineer set the brakes, he says, at once, but it was too late to stop the train before it struck the boy.

It is probable that the lad did not distinguish the noise made by the train approaching, from that made by the train

which he was watching.    But the evidence does not tend to show that there was anything to give notice of this to the fireman who saw him there, in time for any action to be taken to prevent the accident, or even to blow the whistle. To charge the defendant with negligence, it would be necessary to prove such notice, " at least long enough before the injury inflicted to have enabled him to have formed an intelligent opinion as how the injury might be avoided and apply the means."    Chicago, B. & Q. R. R. Co. v. Johnson, 103 Ill. 512.

We are of the opinion that the evidence fails to charge the defendant with negligence, and that a verdict to that effect could not have been sustained.

In view of what has been said, it is unnecessary to discuss the application of the doctrine of contributory negligence to the conduct of this boy between eight and nine years of age.    It has been held on the one hand, in this State, that children of tender years are incapable of such negligence; and on the other, that it is always a question of fact for a jury, whether, under the facts in a particular case, the child was in the exercise of proper care.    Chicago City Ry. Co. v. Wilcox, 138 Ill. 382.

The record in this case shows, however, that a jury upon the first trial did find expressly that the boy was of sufficient age and intelligence to understand that gates when down were a signal that trains were passing or about to pass the crossing.

" This court has repeatedly declared the doctrine that it is the duty of persons about to cross a railroad track to look about them and see if there is danger; not to go recklessly upon the track, but to take the proper precautions themselves to avoid accidents at such places."    Chicago, B. & Q. R. R. Co. v. Damerell et al., 81 Ill. 454.

Where the evidence is such that the court would be compelled to set aside a verdict for the plaintiff if rendered, it is not error to instruct the jury to find for the defendant, as was done in this case.

The judgment of the Superior Court is affirmed.