William J. Lange, Administrator of Estate of William D. Lange, Deceased, Appellant, v. Pennsylvania Railroad Company, Appellee.

Gen. No. 45,128.

Opinion filed November 29, 1950. Released for publication February 23, 1951.

Bruneau E. Heirich, of Chicago, for appellant; Robert J. Rafferty, of Chicago, of counsel.

Theodore Schmidt, P. J. Cronin, and Barrett, Barrett, Costello & Barrett, all of Chicago, for appellee; George F. Barrett, John W. Costello, and Edward Wolfe, all of Chicago, of counsel.

Mr. Justice Kiley delivered the opinion of the court.

This is an action under the Injuries Act (Chapter 70, Illinois Revised Statutes 1949 [Jones Ill. Stats. Ann. 38.01 *et seq.*]) for the wrongful death of a young boy, struck by defendant's train. The trial court directed a verdict for the defendant at the close of plaintiff's case. Plaintiff has appealed from the judgment on the verdict.

The accident occurred at the intersection of defendant's right-of-way and Ridge Road (182nd Street), in the Village of Lansing, Cook County, Illinois. The right-of-way was laid in a northwesterly-southeasterly direction. Ridge Road crossed the right-of-way slightly to the north of west and south of east. Two sets of tracks were laid on the right-of-way, one for trains bound northwest and one for trains bound southeast.

336

The northwest bound trains ran on the track on the east side of the right-of-way. The crossing was protected by single-armed gates. The one on the west of the crossing was at the southwest corner. The standard for the gate at the northeast corner was located between the curb and sidewalk about 15 feet east of the northwesterly bound track. The arm of the gate was fixed to the standard so that it, when lowered, extended across Ridge Road parallel to the tracks. The counterweight, when the gate was lowered, projected about 12 inches across the five-foot-wide north sidewalk of Ridge Road. Above the arm of the gate, when lowered, on the standard, was a metal sign reading, on two lines, "STOP ON RED SIGNAL". Above this sign was a bracket containing four large flasher lights, two facing toward, and two away from, the tracks. Above the lights was another sign "2 TRACKS", and, above that sign, the customary crossed-board sign for railroad crossings. When the gates were being lowered and lifted the crossing bells rang. They did not ring when the gates were down or up. While the gates were down the flasher lights functioned.

The accident happened about 1:30 p. m., December 24, 1942. Plaintiff's intestate would have been eight years old January 6, 1943. He lived about a block and one-half west of the crossing. He had been across the tracks earlier in the day to go to the postoffice southeast of the crossing on Ridge Road, and had returned home for lunch. After lunch he left for the postoffice to see if there was any more Christmas mail. Presumably he was returning to his home when he was struck by a northwest bound freight train while he was in about the center of the track, at the cross-walk.

Plaintiff's intestate was in the second grade, his eyesight and hearing were good. He customarily crossed the tracks twice a day. Witness Vonder, for the plain-

tiff, was seated in an automobile on Henry Street, north of Ridge Road, about 150 feet from the point of the accident. He was waiting for clearance to pass over the right-of-way. A passenger train had just passed, going southeast. The witness looked southeast to see whether any train was coming from that direction before he crossed the tracks. As he looked he saw the boy and also saw the freight train being pulled in a northwesterly direction by an engine with tender in front. At this time the passenger train was just across Ridge Road and the freight train, going 25 miles an hour or more, was "in Ridge Avenue" about 15 feet away from the boy. The gates were still down, the crossing lights still flashing. This witness heard no train bell at the time.

The complaint charged defendant with negligence in the operation of its train across the crossing at an excessive speed; neglecting to ring a bell, blow a whistle or otherwise warn the boy; operating the freight train across the crossing simultaneously with the passenger train going in the opposite direction, with the latter making so much noise that the boy was unable to hear the freight train; failing to maintain a flagman at the crossing; and with general negligence in operation of the train. It also charged wilful and wanton conduct, generally and specifically, in operating the train at a dangerous rate of speed and failing to give a warning of its approach. At the close of the plaintiff's case the complaint was amended with leave of the court. The amended complaint alleged negligence in failing to maintain a gate across the north sidewalk of Ridge Road and in failing to maintain a warning device for pedestrians which would protect pedestrians after the gates had been lowered.

The trial court directed the verdict after deciding that even had a train whistle blown or a train bell been rung, it would not have made any difference, and that

there was no duty on the railroad to give more warning than was given the boy by means of the gate and flasher signals.

The trial court decided as a matter of law that the plaintiff had not made out a prima facie case. We test the correctness of that decision by taking as true the evidence favorable to plaintiff and drawing legal inferences therefrom in the light most favorable to him, to determine whether there is any evidence in the record tending to prove the decedent's due care and defendant's negligence.

The angle made by defendant's northwest bound track and the sidewalk of Ridge Road was approximately 45 degrees. The freight train which struck decedent therefore approached him from his left and, if he was facing west, from somewhat to his rear. It was travelling 25 miles an hour and did not sound its bell or whistle. It was into Ridge Road when the passenger train had just cleared Ridge Road. The gates when being lowered had signaled by bell the approach of the passenger train. Once the gates had been lowered the bell ceased ringing. It did not ring for the approach of the freight train. Customarily the gates rose about 5 seconds after the trains cleared the crossing.

The decedent was standing in the easternmost track as the passenger train cleared Ridge Road. Presumably he had walked there while that train was approaching or passing. Furthermore, we presume he walked past the lowered gate. A boy his age ordinarily would waste no time in crossing the tracks if the gate was up. There was no arm of the gate across the sidewalk. We infer decedent saw the passenger train, did not observe the approach of the freight train, assumed no train was coming on the track where he stood, and intended to complete his crossing when the passenger train was out of the way or the gates lifted. Before he could carry out the intention he suddenly became con-

scious of the freight train bearing down on him, "seemed to jump back and forth" and "to be in a flutter" and was struck.

It is possible that at the hour 1:30 p. m. the decedent would not have seen the flasher lights or that, if he did so, he would have assumed that they signaled the approach and passing of the passenger train. Also, as plaintiff argues here, there is evidence that a brakeman on top of the freight train shouted at decedent and thereby might have added to decedent's confusion under the circumstances.

It is sufficient to distinguish cases cited by defendant, on the question of decedent's due care, that none of those cases involved a small boy except *Theobold v. Chicago, M. & St. P. Ry. Co.*, 75 Ill. App. 208, and *Koehler v. Chicago City Ry. Co.*, 166 Ill. App. 571. The *Theobold* case is the closest case, on the facts, cited by the defendant. There the trial court expressly refrained from discussing the doctrine of contributory negligence as applied to the Theobold boy who was between eight and nine years of age.

In the *Koehler* case the plaintiff was a minor, ten years old. The Appellate Court decided that the trial court should have directed a verdict for defendant because the plaintiff was guilty of negligence as a matter of law. As authority for this decision it cited *Chicago Union Traction Co. v. McGinnis*, 112 Ill. App. 177, and *Wilson v. Chicago City Ry. Co.*, 133 Ill. App. 433. We think it is a fair statement of the *Wilson* case that the court affirmed the judgment for defendant on the directed verdict on the ground that there was no evidence tending to prove the negligence of the defendant. Obviously there was no definitive rule stated and no authority for any such rule as that stated in the *Koehler* case. In the *McGinnis* case the court held that the question of the minor plaintiff's contributory negligence was for the jury. The court did, however, set forth the

rule stated in the *Koehler* case, citing as authority *Heimann v. Kinnare,* 190 Ill. 156. The *Heimann* case involved a boy between 13 and 14 years old who was a trespasser. The court said that under the circumstances there the trial court should have directed a verdict for defendant. It gave, as a basis for its conclusion, several Illinois cases and cases from other jurisdictions, all of which seem to involve boys who were trespassing. The court distinguished *City of Pekin v. McMahon,* 154 Ill. 141, where the boy was 8 years old, on the grounds that the boy was of tender years, not a conscious trespasser, and that the city had notice of the danger and had neglected to correct it. It is interesting to note that in *Maskaliunas v. C. & W. I. R. R. Co.,* 318 Ill. 142, the boy, 7 years and 10 months old, was a trespasser.

█ Plaintiff concedes that if the decedent had been an adult, his conduct, as a matter of law, would have constituted contributory negligence. The record discloses that the trial court did not determine decedent's contributory negligence as a matter of law. The court was required to leave this question to the jury (*Maskaliunas v. C. & W. I. R. R. Co.; Heimann v. Kinnare,* 190 Ill. 156) because decedent was 7 years and 11 months old.

In *Theobold v. Chicago, M. & St. P. Ry. Co.,* 75 Ill. App. 208, the Appellate Court affirmed the judgment on the directed verdict for defendant on the ground that, based on testimony that no whistle was sounded, there was no question of the railroad's negligence for the jury. The court said that if the boy had been standing on the track, rather than six or eight feet away from it, the situation would have been different. It also said that probably the boy did not distinguish the noise of the approaching train from that of the train he was watching go in the opposite direction but that there was nothing to show notice to the trainmen of

the boy's predicament in time for them to blow the whistle.

In *Bjork v. Illinois Cent. R. Co.*, 85 Ill. App. 269, this court, on the authority of the *Theobold* case, said that when a passerby sees a train passing in front of him he has all the warning that gates can give. In the instant case that would apply to the passing passenger train but not to the freight train. Neither *Hyland v. Chicago & N. W. Ry. Co.*, 262 Ill. App. 427, nor *Witiak v. Delaware & Hudson R. R. Corp.* (3rd Cir.), 153 F. (2d) 379, involved a minor. The facts of the accidents are dissimilar also and we think the cases are not applicable.

■ Defendant contends that the testimony of the witness Vonder that he heard no bell or whistle, was, under the circumstances, negative evidence without probative force. We think that Vonder's testimony does not come within the term "merely negative" (*Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192, 196) evidence incapable of raising the issue whether a bell or whistle was sounded. Vonder was 150 feet away from the spot of the accident and heard a trainman on top of the freight train call to the decedent. We think if he heard the trainman's voice at that distance he should be able to testify whether or not he heard the train bell or whistle at the same distance. Vonder's testimony should be considered.

The question therefore is: Should the defendant, through its agents, as reasonably prudent persons, have anticipated that, in the absence of crossing bells ringing while gates are down, and in the absence of the sounding of a whistle or bell by a freight train approaching the crossing from an angle somewhat to his rear, a boy, seven years and eleven months of age, might walk from a sidewalk, over which a crossing gate arm does not extend, onto the first track, while watching a passenger train going on the second track in a

direction opposite to the freight train, and be distracted by the passenger train so as to be oblivious of the approaching freight train until it was 15 feet away and too close to be avoided. If reasonable men could differ in their answers to this question, the issue, whether defendant was guilty of negligence proximately causing the boy's death, was for the jury.

Defendant argues that if a whistle or bell had been sounded at the time Vonder saw decedent on the track, such a warning would have been of no benefit because at that time decedent had already seen the approaching freight train. That might be so but might not be true had the train whistle or bell been sounded earlier so as to give the boy ample opportunity to get off the track. The trial court thought that the defendant had done all that it could to give warning at the crossing by lowering the gates and providing the flasher lights. So far as the flasher lights are concerned it might be that at their height and at that hour and under those circumstances the boy did not see them. He was west of the flasher lights on the east side and the passing passenger train may have obscured the flasher lights on the west side of the crossing. In the absence of notice of the approach of the freight train, the lowered gates may have been notice only of the passing passenger train.

██ For the reasons given we are of the opinion that the questions of due care of plaintiff's decedent and the negligence of the defendant were for the jury. It follows that we believe the trial court committed error in directing a verdict for defendant. The judgment on the verdict is reversed and the cause is remanded for trial of the issues.

*Judgment reversed and cause remanded.*

BURKE, P. J., and LEWE, J., concur.