Louise Styblo and Rudolph Styblo, Appellees, v. James H. McNeil, Appellant.

Gen. No. 42,186.

Opinion filed January 6, 1943.

BARNET HODES, Corporation Counsel, for appellant; JAMES A. VELDE, EMIL J. BROZ, JOSEPH W. GRIGAL, ALPHONSE CERZA and BARNEY FAGEN, Assistant Corporation Counsel, of counsel.

Abram E. Adelman, of Chicago, for appellees; Charles E. Gruenberg, of Chicago, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

Rudolph Styblo and Louise Styblo, husband and wife, filed their amended two count statement of claim in the municipal court of Chicago against James H. McNeil to recover damages for personal injuries suffered by Louise and for damages to an automobile owned by Rudolph, incurred in a collision between the Styblo automobile and a police car of the City of Chicago being driven by defendant on August 19, 1939. Count 1 alleged negligence and count 2 wilful, wanton and reckless conduct by the defendant in the operation of the police car. The case was tried before the court and a jury. The court directed a verdict for the defendant on count 1. The jury returned verdicts finding the defendant guilty, assessing Rudolph's damages at $180, Louise's damages at $1,500, and that malice was the gist of the action. Louise remitted the sum of $500. Motions by the defendant for directed verdicts, for judgments notwithstanding the verdict and for a new trial were overruled, and judgments were entered in favor of Rudolph for $180 and in favor of Louise for $1,000. Defendant appeals.

The defendant maintains that the trial court should not have entered judgment in favor of Louise because the verdict exceeded the jurisdictional limits of that court. The parties are in agreement that this case is properly designated as of the fourth class, defined in section 2 of the Municipal Court of Chicago Act (sec. 357, ch. 37, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 108.028].) Fourth class cases include (a) all civil actions, quasi-criminal actions excepted, for the recovery of money only when the amount claimed by the plaintiff, exclusive of costs, does not exceed $1,000. Defendant cites *People ex rel. McClintock v.*

*Skinner,* 13 Ill. 287; *Reading v. Mead,* 16 Ill. App. 360; and *G. B. Hemmingway Co. v. Keagle,* 181 Ill. App. 5, in support of his contention. We do not consider these cases applicable to the factual situation presented by the record before us. At the time Louise Styblo filed her action and at all times she was asking for damages in a sum not to exceed $1,000. The parties understood that the court's jurisdiction in a fourth class case was limited to $1,000, except that in any action of that class for the recovery of money only, judgment may be rendered in an amount exceeding $1,000 where the excess ''shall consist of interest or damages or costs accrued after the commencement of such action.'' At the time the case was submitted to the jury Louise was asking for an amount not to exceed $1,000. It cannot be doubted that while the case was on trial and while the jury was deliberating, the court had jurisdiction of the subject matter. The error occurred when the jury fixed the damages at the sum of $1,500. This error by the jury could not and was not discovered by the parties or the trial judge until the verdict was returned. Thereupon, Louise remitted $500. The court properly entered this remittitur. We are satisfied that the court had jurisdiction of the subject matter during the trial and at the time the judgment was entered.

The second point urged by defendant is that the plaintiffs did not prove their allegations of wilful and wanton conduct. Plaintiffs insist that the verdict is supported by the law and the evidence. At about 9:20 Saturday evening, August 19, 1939 the defendant, a police officer of the City of Chicago, was driving police squad car No. 148 of the 24th district north on Whipple street between 27th and 26th streets in Chicago, when through the police radio receiving set in the car he was told to make an investigation of an accident at Pulaski and Cermak roads. Pulaski road a north and south highway is 4000 west and Cermak road an east

and west highway is 2200 south, according to the Chicago lot numbering system. Police Officer Raymond Grace was also on duty in the car. Both officers were in uniform. At 26th street the defendant turned the car west and the car proceeded to Trumbull avenue (3450 west), eight blocks west of Whipple street. There are buildings on all four corners of the intersection of Trumbull avenue and 26th street. There are eastbound and westbound street car tracks on 26th street. There are no "Stop and Go" traffic signals at this intersection. At this time on Saturday night the intersection is very well lighted. It is a business district and the stores have their own lights in the street in addition to the street lights. Numerous pedestrians were on the sidewalks. On that evening the plaintiffs were in a 1934 Chevrolet automobile proceeding south on Trumbull avenue. Mr. Styblo was driving and Mrs. Styblo was in the front seat next to him. When the Styblo car reached 26th street he stopped north of the building line to allow pedestrians to cross. He then looked to the left and right and started to cross. He was going about six or seven miles an hour. Defendant testified that when he was about 40 feet from the intersection he saw the Styblo car and swerved to the left about five feet to avoid it; and that he thought Styblo would stop. Mr. Styblo testified that there was a screeching of brakes of the police car, which called witness's attention to it; that when witness first saw the police car it was about 20 feet from him straddling one eastbound rail and one westbound rail, and that witness's car was then between the westbound street car rails and had not reached the center of the street; that the police car skidded about 20 feet and struck the driver's door of witness's car. A crowd of about 400 people gathered. There were skid marks on the street for about five or ten feet back of the police car. The Styblo car was turned over on its right side facing in a southeasterly

direction. Mrs. Styblo was pinned under the car and received serious and painful injuries. The Styblo car was damaged. Mr. Styblo climbed out, the car was righted, and he and Mrs. Styblo were removed to St. Anthony's Hospital. Mrs. Styblo remained there for about two weeks. Both Officer Grace and defendant were injured and were also taken to St. Anthony's Hospital. Officer Grace remained there for five days. His nose, mouth and head were injured and he was "supposed to have a possible skull fracture." The defendant received a "bad bang" on the head and suffered cuts and bruises. At the scene of the collision the defendant was spitting blood into his handkerchief. After the collision both officers were walking in a sort of stupor or dizzy manner. There is a conflict in the evidence as to certain phases of the case.

Mr. Styblo testified that when he first saw the police car 20 feet from him it was going 30 to 35 miles an hour. He testified, "If the defendant sounded the siren, I didn't hear it." He also testified, "There were absolutely no lights" on the police car. After the collision, the only time he saw the defendant was at the hospital, where he was close to him "about a half a second." He testified that the defendant "was unsteady on his feet and had the odor of liquor on his person." Mrs. Styblo testified that she did not hear a siren immediately before the collision, nor see any lights on an approaching automobile from either the east or the west and that she did not hear any screeching of brakes before the collision. Irwin Eisenhammer, standing about 200 feet west of Trumbull avenue on the south side of 26th street, heard the squeaking of brakes, looked east, and saw the collision. He ran up and helped others in turning Styblo's car over in order to release Mrs. Styblo. He testified that when he was standing near the police car a man whom he did not know put his head and hand in the door of the car on the right side and pulled out a pint bottle. On direct-examination the witness said that the bottle

"was half-filled with whiskey," and that he saw a label on the bottle containing the words "blended whiskey," but on cross-examination he testified that he did not know that the bottle contained whiskey. The man who took the bottle from the car, the witness testified, opened the bottle, put it in his pocket, and said, "I'm going to keep that for evidence." He did not talk to the defendant and Officer Grace. The defendant, he testified, walked "pretty fair" but his "eyes were kind of bloodshot and when he walked right around why you could smell liquor." The witness was about a foot away from the defendant for about two minutes. The man who (according to the testimony of Eisenhammer) took the bottle from the car, was not produced as a witness. Charles Blasak, who was 75 feet west of the intersection walking east, testified that he did not see any lights on the police car or hear any siren or horn. He testified that the rear of the Styblo car "was just crossing the south rail of the westbound tracks at the time of the accident." Edward Cronin testified that about 9:30 on the evening of August 19, 1939 he was on the south side of 26th street between Christiana avenue (3350 west) and Homan avenue (3400 west). He was walking west. He heard a siren at about Christiana avenue and saw a police squad car going west on 26th street. He heard the siren after the car passed Homan avenue and was approaching Trumbull avenue. After the police car passed him, he stepped into the doorway of a store about three doors east of Homan avenue. Shortly thereafter he went out and approached Trumbull avenue and 26th street and saw the Styblo car and the squad car at the corner. He did not see or hear the collision. He testified that when he viewed the police car after the collision one light on the left hand side was burning and the other light was "all smashed in." He saw defendant and Officer Grace there. They both were dazed; the defendant was spitting blood; Officer Grace had blood "all over his face" and a cut

over his nose. He estimated the speed at which the police car was traveling while he was observing it, at "about 25 miles an hour." Officer Grace testified that the siren on the squad car was operated from a button on the dash board. When the button is pressed the siren blows for a while and as the warning sound begins to die, the button is pressed again. He testified that as the squad car started west on 26th street "where the traffic is heavy," they began to sound the siren, that the siren was sounded all the way from Whipple street to Trumbull avenue, where the accident occurred. He estimated the speed of the squad car at about 20 or 25 miles an hour. He stated "there was no liquor in that squad car." On cross-examination he testified that he did not drink at all and that he had never seen defendant take a drink. As to the lights of the car, he testified that they were lighted about 8:30 and he remembered that he saw them ahead of the car when it entered an alley at Pilsen Park. This occurred just before they received instructions by radio to make the investigation. The defendant testified that the siren was sounded steadily from the time the squad car turned into 26th street until the collision. While traffic was heavy on 26th street, he had no difficulty with it since the siren was going and motorists pulled to the side of the street to let the squad car go by. When the car was on 26th street, it was going about 25 miles an hour. He saw the Styblo car when he was about 40 feet from the intersection of Trumbull avenue. He swerved to the left and thought that Mr. Styblo would stop. He had driven a car about 18 years. He testified that he was not a drinking man, that "now and then I have a glass of beer." He examined the squad car before he took it out and if there had been a bottle back of the driver's seat he would have known it.

Mrs. Styblo suffered severe and painful injuries. She suffered a cut on the back of her head from ear to

ear, requiring 30 sutures. This cut went to the bone. The flesh, tendons and muscles were severed. She was cut on the thigh and suffered a fracture of the right wrist. The injury to her wrist is permanent. There is an area on her scalp which will be permanently bald.

The defendant asserts that there is no evidence to support the allegation of wilful and wanton conduct and that it was the duty of the court to direct verdicts in his favor. He points out that he was a police officer engaged in the performance of his duties prior to and at the time of the collision. He cites the case of *Taylor v. City of Berwyn*, 372 Ill. 124, where a judgment was rendered against a police officer who was driving a car at a high rate of speed. The Supreme Court affirmed the action of the Appellate Court in reversing the judgment against the city and the police officer. Defendant calls our attention to various provisions of chapter 27 of the Municipal Code, entitled "Traffic." Chapter 27-1 defines authorized emergency vehicles as:

"Any vehicle of the Chicago fire insurance patrol, the fire department or police department of any governmental agency, any repair or service vehicle of any public service corporation, or any ambulance."

Section 27-6 grants exemptions to authorized emergency vehicles as follows:

". . . No operator of any authorized emergency vehicle shall assume any special privilege under this section except when such vehicle is operated in response to an emergency call, and this exemption shall not protect the operator of any such vehicle from the consequences of a reckless disregard of the safety of others."

Section 27-38 contains the following speed limitation:

"It shall be unlawful to operate any motor vehicle upon any street or other public way of this city at a speed greater than is reasonable and proper, having

regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person. If the rate of speed of any motor vehicle operated upon any public street or highway where the same passes through a business district exceeds twenty miles an hour, or if the rate of speed of any such motor vehicle operated on any public street or highway in the city where the same passes through a residential district exceeds twenty-five miles an hour, or if the rate of speed of any such motor vehicle operated on any public street or highway in this city in a sparsely settled district exceeds thirty-five miles an hour, such rates of speed shall be prima facie evidence that the person operating such motor vehicle is running at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the way or so as to endanger the life or limb or injure the property of any person.''

Section 27–47 reads as follows:

''Upon the approach of any authorized emergency vehicle giving audible signal, the operator of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right-hand edge or curb of the street, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle shall have passed, unless otherwise directed by a police officer. The motorman of every street car shall immediately stop such car clear of any intersection and keep it in such position until the authorized emergency vehicle shall have passed, unless otherwise directed by a police officer.''

Section 169, ch. 95½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 85.201], provides that:

''(a) Upon the immediate approach of an authorized emergency vehicle, when such driver is giving audible signal by siren, exhaust, whistle or bell, the

driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer. . . . (c) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

It will be observed that the municipal ordinance provides that the driver of an emergency vehicle shall not assume any special privilege under the section, except when the vehicle is operated in response to a call, and that when he is responding to an emergency call he is not protected from the consequence of a "reckless disregard of the safety of others," and that sec. 169, ch. 95½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 85.201] provides that the operator of an emergency vehicle is required to drive with due regard for the safety of all persons using the highway. The evidence by plaintiffs is that the defendant failed to sound the siren of his car. The evidence on behalf of defendant is that he did sound the siren. The defendant urges that the testimony that defendant did not sound his siren is negative in character and does not prove that the siren was not sounded. He cites cases from which he argues that negative testimony of the kind presented by plaintiffs will not support a judgment based on allegations of wilful and wanton conduct. If a defendant were not in fact sounding his siren, the normal way for a plaintiff to prove such fact would be by producing witnesses who were within hearing distance to testify that they did not hear a siren. If negative testimony of this character is to be disregarded, then it would be well nigh impossible to

prove in any case that the siren was not sounded. We do not view the cases of *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192, 196, and *Bryan v. City of Chicago*, 371 Ill. 64, 70, as holding that testimony of a negative character is to be disregarded. Such testimony is to be carefully searched and weighed. In the *Provenzano* and *Bryan* cases the Supreme Court did not feel that the testimony of a negative character supported plaintiffs' allegations. We find that in the instant case there was sufficient evidence to warrant the jury in finding that the defendant did not sound the siren. However, the evidence of plaintiffs is not confined to an endeavor to show a failure to sound the siren. There was testimony that the defendant did not have the headlights lighted. The evidence introduced by the defendant was to the effect that the headlights were lighted. Plaintiffs also introduced testimony to support a charge that the defendant was intoxicated. The testimony introduced by the defendant supported his denial of the charge. There was a conflict as to the rate of speed. Mr. Styblo estimated the speed of the police car at 30 to 35 miles an hour. Officer Grace, Edward Cronin and the defendant estimated the speed at 20 to 25 miles an hour. Considering the force of the collision and all other circumstances, the jury was justified in believing that the defendant was driving the car at a speed of 30 to 35 miles an hour. We are of the opinion that the evidence supports the verdict of the jury that the defendant was guilty of wilful and wanton conduct in driving the car, thereby causing the injuries and damage. Defendant asserts that the trial judge erred in failing to direct a verdict as to the wilful and wanton count after he had directed a verdict on the negligence count. A careful examination of the record convinces us that the court did not err in refusing to direct a verdict on the wilful and wanton count. Our view is that the court erred in directing a verdict in favor of the defendant as to the negligence

count. We believe that there was sufficient evidence to go to the jury on both counts.

Defendant insists that the trial court erred in permitting a portion of the traffic code to be read to the jury at the conclusion of the testimony of Rudolph Styblo. The record shows that the attorney for plaintiffs announced that he was going to read into the evidence paragraph 38 of the Municipal Code of Chicago of 1939. Thereupon the attorney for the defendant inquired, "You want to read that into the evidence now?", to which the attorney for the plaintiff replied, "That is right." The attorney for defendant then stated, "I do not think it is proper at this time." One of the attorneys for the defendant then inquired, "Are you through with the plaintiff?", to which plaintiff's attorney replied, "No, I am not." Then defendant's attorney said, "Then I object because it isn't proper." The court overruled the objection. The attorney for the plaintiff then read the following to the jury:

"It shall be unlawful to operate any motor vehicle upon any street or other public way of this city at a speed greater than is reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person. If the rate of speed of any motor vehicle operated upon any public street or highway of this city where the same passes through a business district exceeds twenty miles an hour, or if the rate of speed of any such motor vehicle operated upon any public street or highway in the city where the same passes through a residential district exceeds twenty-five miles an hour or if the rate of speed of any such motor vehicle operated on any public street or highway of this city in a sparsely settled district exceeds thirty-five miles an hour, such rates of speed shall be prima facie evidence that the person operating such motor vehicle is running at a rate of speed greater than is reasonable and proper having regard to the traffic and

use of the way or so as to endanger the life or limb or injure the property of any person.''

We agree with plaintiff that the objection of the defendant was not sufficiently specific. The objection was general. An objection, except where it is obvious, should be stated in such a manner as to inform the court of the point being urged. Apparently, the objection was that the reading of the section of the ordinance was improper at that time. The objection was not directed to the action of counsel in reading the section, but to reading it ''at this time.'' On appeal the parties argue as to the application of the provisions quoted relating to the operation of an emergency vehicle and the rights and duties of the driver and of other drivers and pedestrians. We have carefully examined the record and do not find any instructions tendered or given to the jury on this subject. The injuries suffered by Mrs. Styblo were painful and severe and will be permanent. The judgment for $1,000 is inadequate. The evidence would warrant damages for a greater sum.

For the reasons stated, the judgments of the municipal court of Chicago are affirmed.

*Judgments affirmed.*

HEBEL and KILEY, JJ., concur.