<hr />

(No. 4598—)

ADELINE HAYNES, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 20, 1956.*

RAYMOND J. CARROLL, Attorney for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

Claimant, Adeline Haynes, a woman 37 years of age and a resident of Chicago, Illinois, brings this action to recover the sum of $7,500.00 for injuries sustained by her on August 9, 1953, when she fell, fracturing her right leg, while walking upon a nature trail in Horseshoe Canyon, Starved Rock State Park, at a point between the boat landing and Horseshoe Falls. She was present in the park attending an outing under the auspices of the Romping

Earls Social Club, had paid the statutory entrance fee, and was, therefore, an authorized patron or park visitor.

In her amended complaint she alleged, under oath, that respondent negligently maintained a wooden stairway on the trail in a worn-out, defective, rotten and unsafe condition, and that she fell while walking thereon. Respondent filed no answer, and, under Rule 11 of this Court, a general denial of the facts set forth in the amended complaint is considered as filed.

The evidence offered by claimant as to the alleged place of falling referred to a series of three logs embedded in a rough, sandy nature trail sloping downward toward the bottom of the canyon, such logs being placed one above the other along the trail in stairstep fashion.

Two photographs, claimant's exhibits Nos. 1 and 2, taken by her attorney some nine months after the happening of the accident, were admitted into evidence with the understanding that they should not be held to portray the condition of the logs with respect to decay on the day of the accident, due to the length of time elapsing between the happening of the accident and the taking of the photographs. These exhibits were admitted for the purpose of portraying the place on the trail where claimant contends she fell, and to show the general manner in which the logs were placed.

From the evidence it appears that claimant, in the company of several other women, after taking a boat trip to the Horseshoe Canyon landing, started down the regular trail, intending to go to Horseshoe Falls. This was a rough nature trail, running through a wooded area of clay and sand, and subject to much erosion, with tree roots extending out onto the trail.

Claimant testified that she was watching the trail, as she walked along, following approximately one step behind one of her companions, a Mrs. Wright, and was in turn being followed by Mrs. Lillian Smith, another companion.

All three women testified that they came to the place on the trail shown in claimant's exhibits Nos. 1 and 2, that the logs were placed in a stairstep arrangement, one above the other, and that it was the first set of logs that they came to after leaving the boat dock.

According to their testimony, Mrs. Wright had gone down the three logs without incident, and claimant, following one step behind, had gone down the first two logs, stepped on the bottom one and fell, breaking her leg. Claimant testified that, as she came along the path, she saw the logs, but noticed nothing unusual about them, and that, when she stepped on the third log, a "piece broke off, and I fell". When questioned by the Commissioner regarding the condition of the steps, claimant stated that the piece of the log, which was broken off, was a little less than a foot in length, and about two inches thick. She testified that someone told her that it was the piece, which had broken off of the log, but did not remember who that person was, or what was done with the piece of wood. She described the piece of wood as being rotten.

In identifying the particular place where she fell, she stated that claimant's exhibits Nos. 1 and 2 were pictures of the place, and that the photographs correctly portrayed the condition of the area, with the exception that the bottom log shown in the photographs was more rotten than was the log on the day of the accident, and was "broken off more, and decayed".

Mrs. Lillian Smith, claimant's witness, testified that she saw claimant fall, as she stepped upon the log. She described the third log as being rotten and "very bad". She, too, identified claimant's exhibits Nos. 1 and 2 as being photographs of the logs where the accident occurred. She also testified that she found a small rotten piece of wood along the trail near where claimant fell. She pointed out on claimant's exhibit No. 1 a place on the right side of the lowest log, concluding that it was the place from which the piece of wood was broken. When questioned concerning the chip of wood, which she saw, she stated she noticed it, because it was "kind of a large piece".

Claimant's witness, Mrs. Willie Wright, described the bottom log as being rotten. She stated that, as she approached the logs, she saw them, and noticed nothing unusual about them. Mrs. Wright did not see the piece of wood that was broken off of the log, and stated that she was so excited after claimant fell she "did not know much of anything".

Mr. Effert Brown, claimant's witness, testified that he was the secretary of the Romping Earls Social Club, and had accompanied claimant and the other women to the boat landing. He and a Henry Brown were waiting there for them to go to and return from the Falls. About ten minutes after they left, Mrs. Smith came back and informed them that claimant had been hurt. Both of the men went to the place where claimant had fallen, and carried her back to the boat landing.

He testified on cross-examination that he did not descend any steps to go to the place where he found claimant. When questioned by the Commissioner, he

stated that, when he and Mr. Henry Brown picked claimant up, he did not recall walking up any steps.

Respondent's evidence consisted of testimony with respect to the condition of the trail on the day following the accident. Miss Betty Hilliard, at that time employed as Park Naturalist at Starved Rock State Park, testified that, on the afternoon of the accident, she learned of claimant's injury, and went to the boat landing where claimant was sitting in a chair. She learned generally from her that she, claimant, had fallen on a step on the path leading from the boat landing to Horseshoe Falls. She transported claimant in her automobile to the place where the buses chartered by the Romping Earls Social Club were located. Claimant determined to return to Chicago rather than go to the hospital at Ottawa, and left before any further information could be learned with respect to the exact location of her fall.

The afternoon of the accident Betty Hilliard made a report to Mr. C. S. Martin, Custodian of the Park, after interviewing claimant, and the next day both Mr. Martin and Miss Hilliard, along with Walter Gorski, a trail maintenance man, conducted an inspection of the trail from the boat landing to the Falls.

They each testified in direct contradiction to claimant and claimant's witnesses that the set of three logs shown in claimant's exhibits Nos. 1 and 2 was not visible on the trail the day after the accident. They further testified that on that date only one set of log steps was visible, and that such set of log steps was not in a rotten condition. Mr. Martin also testified that, approximately three weeks prior to the accident, he had inspected this same trail, and did not see the condition portrayed by claimant's exhibit No. 1.

On cross-examination, Walter Gorski testified that, in April of 1953, some three or four months prior to the accident in question, he had replaced one or two of the logs shown in claimant's exhibits Nos. 1 and 2, which logs had become exposed by reason of the sand on the trail washing away. After replacing them, he "filled them in with sand".

Betty Hilliard testified that she took photographs of all steps and logs upon the trail that were visible the day following the accident. She identified respondent's exhibit No. 1 as a series of photographs, one of which portrayed the only set of logs visible that day, and stated that it was a completely different set of logs than that shown in claimant's exhibits Nos. 1 and 2. It is obvious from an inspection of the photographs that such is the case.

Both sets of logs were described by respondent's witnesses as being what is called "riff-raff". They testified that the purpose of riff-raff was to hold down erosion of the trail. These witnesses testified that the erosion of the sandy trail was of such severity that from time to time over a period of some weeks or months the various sets of logs (or riff-raff) would be alternately covered and uncovered by loose sand, because of heavy rains washing the trail. It appears that this method of combating erosion had been instituted by the C.C.C. several years prior to the accident.

At the hearing, the Commissioner sustained an objection to respondent's exhibit No. 1 on the ground that it was not shown to be a photograph of the scene of the accident. We believe this photograph is admissible, inasmuch as it is relevant and material to one of the questions in dispute, namely, whether or not the set of logs shown in claimant's exhibits Nos. 1 and 2 was the location of the

accident, and was visible on the date in question. Inasmuch as repondent's exhibit No. 1 has been identified as a photograph of the only logs visible at the time of the inspection on the day after the accident, and further that the logs shown therein are clearly a different set of logs than that shown in claimant's exhibits Nos. 1 and 2, we hold that respondent's exhibit No. 1 is relevant and material to the issues, and herewith reverse the ruling of the Commissioner, and admit such exhibit into evidence.

Mr. Raymond J. Carroll, claimant's attorney, testified that, on November 6, 1953, three months subsequent to the accident in question, he went to the park, and observed two sets of logs on the trail leading from the boat landing to the Horseshoe Falls. The first set of logs was located 150 yards from the boat landing, and was in good condition.

The logs shown in claimant's exhibits Nos. 1 and 2, according to Mr. Carroll, were located 250 yards further down the path from the first set of logs, or a distance of 400 yards from the boat dock. He further testified that the bottom log of this set was rotten. Mr. Carroll took the photographs marked claimant's exhibits Nos. 1 and 2 in May of 1954, some nine months after the accident occurred, and some six months after he observed the logs for the first time, while conducting his investigation. These photographs were the first and only ones taken by anyone on behalf of claimant.

From an analysis of the testimony, it is quite apparent that there is a direct conflict between claimant and respondent with respect to the existence of the particular defect on the trail, which allegedly caused the accident. It is fundamental that, in cases such as this, involving alleged defects in roads, pathways, and sidewalks, claim-

ant must, in order to recover, prove the following elements:

1. The existence of the alleged defect, its nature and size.
2. Actual or constructive notice to respondent of such defect.
3. Negligence in causing or failing to repair the defect.
4. The exercise of due care and caution on the part of claimant.
5. An injury proximately resulting from the alleged defect and negligence.

In this type of cases, as in all others, this Court must act not only as judges of the law, but also as finders of the facts. We must weigh the testimony to determine whether or not claimant has borne the burden of proof.

After having considered the testimony and the inferences arising therefrom, we have concluded that claimant has failed to sustain the burden of proving by a preponderance of the evidence the necessary elements of her cause of action, as alleged in her amended complaint.

The evidence with respect to the alleged place where claimant fell, and the existence of the defect, which allegedly caused the injury, is unsatisfactory and in conflict.

We note that claimant and her two companions testified that the accident occurred on the first set of logs encountered after leaving the boat dock. Mr. Carroll's testimony was that the set of three logs first encountered on the path from the boat dock were in sound condition in November, some three months subsequent to the accident. The testimony of respondent was that on the day after the accident the only set of logs visible along the pathway was that portrayed in respondent's exhibit No. 1, which was in good condition. These logs portrayed in respondent's exhibit No. 1 appear, from the photograph, to be in good condition.

If this testimony is correct, it necessarily follows that claimant and her witnesses were mistaken when they placed the scene of the accident on the set of logs por-

trayed in claimant's exhibits Nos. 1 and 2, and in their characterization of the log, upon which claimant allegedly fell, as defective. Had the accident occurred on the logs portrayed by respondent's exhibit No. 1, there could be no recovery, inasmuch as no condition existed thereon, which would constitute a negligently maintained defect on a nature trail.

It is likewise true that, if claimant and her companions are correct in describing the place of the accident as being on the log shown in claimant's exhibits Nos. 1 and 2, then all of respondent's witnesses were mistaken, when they testified that such logs were not exposed on the day after the accident.

If we were to allow a recovery based on the record in this case, we would have to accept claimant's testimony in its most favorable aspect over that of respondent, and resolve the inferences arising therefrom in claimant's favor. This we cannot do. After a careful reading of the entire record, we have been unable to find any valid reason for according more weight to the evidence offered by claimant than that offered by respondent; nor can we say that the inferences, which may legitimately be drawn from all of the testimony, physical facts, and circumstances, weigh more heavily for claimant than for respondent. The strongest position for claimant that this record could allow would be that the evidence is evenly balanced.

Counsel for claimant contended on oral argument that claimant's evidence regarding the defect was positive testimony, namely, that such defect existed; whereas respondent's testimony was negative, since it denied the existence of the defect, and argued that, because of this,

the Court should give more weight to claimant's testimony than to respondent's.

In Volume II, *Wigmore on Evidence,* Sec. 664, it is stated with respect to this question:

"Courts have often been asked to exclude testimony based on what may be called negative knowledge, i.e., testimony that a fact did not occur, founded on the witness' failure to hear or see a fact, which he would supposedly have heard or seen if it had occurred.

Yet there is no inherent weakness in this kind of knowledge. It rests on the same data of the senses. It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that in the ordinary course of events he would have heard or seen the fact had it occurred. . . .

Nevertheless, from some source not traceable, there lingers in the judicial mind, in many quarters, an antiquated notion that negative impressions are not so probative as affirmative impressions; and a charge to the jury often embodies that notion, where the witnesses differ. The truth is that the conditions affecting correctness and fullness of observation are so numerous and varied that the one under consideration has a negligible or minor status. Modern psychology sneers at the law's crude assumption that the complexities of human perception can be handled by some rules of thumb about negative testimony or the like."

The distinction between positive and negative testimony has been the subject of an annotation at 140 A.L.R. 530. As was stated at page 531 of the annotation:

"The slightest reflection will convince one that the positive or negative character of testimony does not necessarily depend upon the form in which the witness couches his answer.

The mere fact that a witness makes an affirmation in a negative form does not change its character as positive evidence . . .

'Where a witness affirms that a fact occurred, and another who had apparently sufficient opportunity to know, and who declares he was paying attention denies that it occurred, it is generally held not to be a case of positive and negative testimony, but of positive testimony on both sides.' 20 *Am. Jur.* 1041, Evidence, §1188.

'Ordinarily, when one witness testifies positively that a certain thing existed or happened, and another witness, with equal means of knowing, testifies that the thing did not exist or happen, the so-called negative testimony is so far positive in its character that a court could not say that it was entitled to less weight than the affirmative testimony.' *Riley* vs. *Northern P. R. Co.* (1908) 36 Mont. 545, 93 P. 948."

The Illinois Courts have long followed this line of reasoning, and to this effect see *Rockwood* vs. *Poundstone,* 38 Ill. 199; *Frizell* vs. *Cole,* 42 Ill. 362; *Styblo* vs. *McNeil,* 317 Ill. App. 316 at pp. 325-326; and, *Lang* vs. *Pennsylvania R. Co.,* 342 Ill. App. 335 at 342.

We believe that the testimony of respondent's witnesses, to the effect that the defect described by claimant did not exist on the day subsequent to the happening of the accident, falls within the realm of positive testimony. The respondent's witnesses were directing their attention to the trail in an effort to discover a defect in the path upon which claimant claimed to have fallen. Respondent's exhibit No. 1, consisting of a series of photographs taken by respondent's witness, Betty Hilliard, in conducting this investigation, contains several pictures of ordinary steps, board walks, and, most significantly, a series of three logs placed in the trail of the same type complained of by claimant, although admittedly a different set. This photograph, in particular, substantiates the fact that respondent's witnesses were making an investigation of, and directing their attention to the existence of all possible steps, logs, and walks upon which claimant might have fallen. This, coupled with their definite testimony that the logs shown in claimant's exhibits Nos. 1 and 2 were not visible on the day after the accident in question, renders their testimony positive in character under the rule. Therefore, claimant's contention that this Court should not give equal weight to respondent's testimony as to claimant's is not well taken.

It is, therefore, our conclusion that claimant, having failed to prove her case by a preponderance or greater weight of the evidence, is not entitled to a recovery under the law of this state. The claim is, therefore, denied.

In view of this determination, we deem it unnecessary to prolong this opinion further by considering the question of whether or not claimant's evidence would, if standing alone and unopposed, be sufficient to establish liability in this case. The fact that we have not passed on this question should not be taken as an implication that such evidence would or would not, standing alone and unopposed, be sufficient to support the allowance of the claim.