John GIGUERE, Plaintiff-Appellee,

v.

UNITED STATES STEEL CORPORATION, a corporation, Defendant-Appellant.

No. 12460.

United States Court of Appeals Seventh Circuit.

March 2, 1959.

Rehearing Denied April 8, 1959.

Harlan L. Hackbert, Chicago, Ill., for appellant. Stevenson, Conaghan, Hackbert, Rooks & Pitts, Chicago, Ill., of ·counsel.

Harry Adelman, Allen A. Freeman, 'Norman R. Liebling, John H. Watson, Jr., Chicago, Ill., for appellee. Freeman, Liebling, Adelman & Watson, Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

This is an action for damages for personal injuries, jurisdiction being based on diversity of citizenship. Plaintiff was severely injured by a falling timber on March 12, 1957, while employed as a carpenter by Sumner Sollitt Company in the erection of a building in the city of Chicago. The Sumner Sollitt Company had been engaged to do the concrete and carpenter work on the building, and the American Bridge Division of United States Steel Corporation (hereinafter called "American Bridge") was engaged to erect the structural steel for the building.

Count I of the complaint charged liability under the Illinois Structural Work Law (Ill.Rev.Stat.1957, Ch. 48, Secs. 60–69). Count II charged common law negligence. Count III relied on the doctrine of *res ipsa loquitur*, but this count was withdrawn at the close of plaintiff's case.

By answer to special interrogatories which were submitted with the general verdict, the jury found the defendant not guilty of violation of the Structural Work Law and not guilty of negligence in the operation of its crane. However, the jury found defendant negligent by a) carelessly and negligently allowing the block to remain insecure and unfastened to the overhead iron beam; b) carelessly and negligently failing to keep a proper look-out for persons working below defendant's operation; c) carelessly and negligently dropping a heavy wooden timber on the plaintiff; and d) carelessly and negligently failing to warn the plaintiff concerning the dangers he was subjected to. The jury found also that the plaintiff was exercising reasonable care for his own safety, and assessed his damages at $175,-000.00.

By March 12, 1957, the steel for two floors of the new building had been erected above the basement level, and an

American Bridge crew was laying planks between the horizontal I-beams slightly above ground level so as to provide temporary flooring. The outer horizontal beams at this level were twelve inches below the next row of beams. In order to provide a level resting place for the temporary flooring planks, 12″ x 12″ x 25′ timbers were to be wired in place on the outer steel beams.

Immediately after lunch on the day in question, an American Bridge crew with Durante as foreman, had secured one such timber in the bay immediately east of the bay where the accident occurred. They then began to place the timber in the second bay, and this was the timber which fell and injured the plaintiff.

At the basement level in the second bay, a shoring timber holding in place the sheet piling which served as a temporary wall of the excavation, interfered with the proper placing of an I-beam, and it was decided to cut a notch in the timber so that the steel beam might be moved and bolted into place. Notching the timber was the work of the contractor, Sumner Sollitt. Sometime before March 12, Haney, the American Bridge superintendent, asked Peterson, the superintendent for Sumner Sollitt, to have the timber notched. On March 12, Peterson told Haney to confer with Smith who was Sumner Sollitt's carpenter foreman. Smith met with Haney in the sub-basement about 1:30 p. m. and Haney pointed out the timber which he wanted notched. Smith marked the timber to show where the cut should be made. Smith then called to plaintiff, one of his carpenters, and directed him to cut the timber. Plaintiff got up on a small ladder and started sawing the timber in order to make the desired notch. Smith and Haney walked away.

As the American Bridge crew was about to place the second timber on the nine inch wide steel beam, Durante testified he looked but saw no one working below. He hooked a wire sling or choker around the timber. A choker is a piece of steel cable, six to eight feet long with a loop or eye at each end. By placing the cable around the timber and passing one eye through the other and hooking it to the crane hook, a slip knot is created, and the timber can then be moved by the crane.

Two employees, Morgan and Biskner, were part of the American Bridge crew. Durante swung one end of the timber to Morgan and the other end to Biskner, and the timber was then lowered into place on the steel beam. The usual method of securing a timber to the beam was to pass several strands of wire three or four times around the timber and beam, loosely at first, so as to permit the timber to be lifted enough so the choker could be detached. The procedure then was to tighten the wires by twisting them.

Just before the accident occurred, Biskner had loosely looped a strand of wire three times around the timber and beam. This was done about four feet from his end of the timber. He also looped another wire near the middle of the timber and then unhooked the choker. Morgan, at the west end of the timber, was looping his wire around the timber and beam for the third time when Witt, another member of the American Bridge crew, carrying a heavy plank which was to be laid across the bay, stepped on the west end of the timber behind Morgan. As he did so, this end of the timber swung to the street side and fell, that end first, into the excavation and struck plaintiff. Witt also fell and was injured. Biskner and Morgan who were sitting on the timber at the time it fell were able to grab the crane hook and the beam respectively and thus avoided falling.

The testimony of plaintiff was not available at the trial because the blow on the head which he received when the beam fell resulted in the development of retrograde amnesia, and he could recall nothing that happened during a period from five days before the accident until he regained consciousness at the hospital.

Morgan testified that he saw plaintiff working below when his crew was ready to lift the timber from the ground. He

claims he hollered "Watch out below," which "we always do when we bring something over." Morgan admitted he didn't look to see if plaintiff moved after the alleged warning, and, in fact, he did not see plaintiff again until after he was injured. Biskner testified he did not see plaintiff and didn't know he was working below.

The errors relied on arise from rulings denying defendant's motions for directed verdict and for judgment notwithstanding the verdict and, under the alternative motion for a new trial, in the admission of evidence and in the manner of submission of the issues to the jury.

We need not consider the claim that defendant violated the Illinois Structural Work Law or that defendant was negligent in the operation of the crane. By answer to special interrogatories, the jury found for the defendant on these issues.

■ The jury found defendant carelessly and negligently allowed the timber (block) to remain insecure and unfastened to the overhead beam. The record contains substantial evidence that the timber was insecure at the time Witt stepped thereon. Defendant makes the point that it did not allow the timber to *remain* insecure. The word "remain" is a relative term. There was evidence that the timber was placed on the beam at a time when the crew had insufficient wire on hand to properly secure the timber. It is a fair inference that defendant intended the timber to remain in that position until more wire arrived. The jury's answer to interrogatory No. 3(2) cannot be disturbed.

The jury also found defendant carelessly and negligently failed to keep a proper lookout for persons working below defendant's operations. We hold the jury's answer to this interrogatory is sustained by substantial evidence.

Defendant attacks the jury's finding that it carelessly and negligently failed to warn plaintiff concerning the dangers he was subjected to as a consequence of defendant's operations. The defendant

claims that before the timber was placed on the beam Morgan hollered "Watch out below" which "we always do when we bring something over." Apparently no one else heard this alleged warning. Neither Durante nor Biskner, who were working with Morgan, testified they heard any such warning. Biskner was only a few feet from Morgan and Durante not more than twenty feet away at the time it is alleged that warning was given. Moss, the water pump engineer who was working in the basement in close proximity to plaintiff, testified he heard no warning. At the time of the trial both Biskner and Durante were still employees of the defendant, and were called as witnesses. They would surely have testified as to a warning if it had, in fact, been given so as to be audible under the noisy conditions existent at a big construction project.

Defendant insists that negative evidence cannot overcome the positive testimony of Morgan. We think in this case it was a question for the jury to determine. Styblo v. McNeil, 317 Ill.App. 316, 45 N.E.2d 1011.

The jury also found defendant carelessly dropped a heavy wooden timber on the plaintiff who was working below. What we have already said is sufficient to demonstrate that this answer by the jury must be sustained.

We hold the district court did not commit error in denying defendant's motion for a directed verdict or for judgment *n. o. v.* We also think the trial court was correct in refusing defendant's alternative motion for a new trial. We do not find any abuse of the trial court's discretion. Jennings v. Murphy, 7 Cir., 194 F. 2d 35.

■ We have carefully considered defendant's claim that plaintiff failed to prove freedom from contributory negligence. In spite of plaintiff's inability to give testimony in his own behalf, due to his physical condition, we have concluded that the record before us affords substantial support to the jury's finding that

plaintiff exercised reasonable care for his own safety.

 Defendant next urges the trial court erred in refusing to submit to the jury the issue of contributory negligence of plaintiff's employer. Defendant insists that § 5(a) of the Illinois Workmen's Compensation Act (Ill.Rev.Stat. 1955, Ch. 48, Par. 138.5) is applicable, and that the cause now before us is preserved only if plaintiff's injury was not proximately caused by the employer or his employee. Defendant admits the evidence does not establish negligence by Sumner Sollitt Company as a matter of law but insists the question should have been submitted to the jury. He relies upon O'Brien v. Rautenbush, 10 Ill.2d 167, 139 N.E.2d 222.

The precise issue presented was recently decided by the Illinois Appellate Court, First Division, in Rylander v. Chicago Short Line Railway Company, 19 Ill.App.2d 29, 153 N.E.2d 225. The arguments submitted to us in this case were made by the same attorneys as appeared for the defendant in the Rylander case. The court there decided against defendant's position. The court said, 19 Ill. App.2d at page 51, 153 N.E.2d at page 235,

> " 'The purpose of section 29 is to require this indemnification of the employer who has not been negligent out of the recovery against the third person whose negligence caused the injury.' This does not in any way put in issue lack of negligence on the part of the employer as a limitation upon the plaintiff's cause of action or as an additional requirement which the plaintiff has to meet before he can recover from the negligent third party."

We think the Rautenbush case is distinguishable because it involved the right of an injured employee to maintain a common law action against a fellow employee. The language of that opinion must be construed in the light of the facts in that particular case. The court did not decide in Rautenbush whether the negligence of the employer was an issue in an action brought by an injured employee against a third party tort feasor. The court in Rylander characterized the quotation from Rautenbush relied on by defendant as "clearly dicta."

On oral argument, counsel informed us that the Supreme Court of Illinois has permitted an appeal in the Rylander case. Nevertheless, we do not feel it advisable that we should hold up the decision of the case at bar until such time as the Illinois Supreme Court may decide the Rylander appeal. We do not know of any persuasive data which would lead us to believe that the Illinois Supreme Court would reverse the Rylander decision. West v. American Telephone & Telegraph Company, 311 U.S. 223, 236, 237, 61 S.Ct. 179, 85 L.Ed. 139. We therefore hold that the trial court did not commit error in failing to submit to the jury the issue of negligence by plaintiff's employer.

 The last point urged by defendant which we need consider is that the trial court erred in admitting certain testimony of Victor Smith, the carpenter foreman. Smith testified that after he left plaintiff and Haney, defendant's superintendent, in the sub-basement, he went above to the ground level. There he met defendant's foreman, Durante, who asked for some wire to tie off a 12 inch by 12 inch timber to an I-beam. Smith directed one of his men named Gibson to take Durante to the place where he could obtain the wire. About seven to ten minutes after Smith had left plaintiff and Haney he encountered Durante who was returning with the wire. Smith testified he said to Durante: "Carl, what are you doing over there? I think you killed one of my carpenters." and that Durante replied "My God, I told him to wait before I got back before he set it." This testimony was received over objection.

It is obvious that Durante's testimony does not clearly indicate to whom he was referring. He was saying that he told

**194**

someone to wait before (until) he got back before some person "set it." It might be inferred that he was referring to somebody in his crew and that the "it" which was to be set was the timber. On the other hand, he might have referred to the plaintiff and to the beam that was to be set as soon as the notch was large enough for the beam to be moved.

We do not pass on the question of whether the statement was admissible as part of the *res gestae* as claimed by the plaintiff. We think the statement in any event was so uncertain that if it was error at all, it was harmless error.

Judgment affirmed.