WILLIE DEAR, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 78-1041

Opinion filed May 29, 1979.

Ellen Kane Munro, of Munro & Zittler, and Edward J. Egan, Jean Golden, and Douglas Shenk, all of Chicago, for appellant Chicago Transit Authority.

Miller and Pomper, of Chicago, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

On the basis of injuries allegedly sustained in a bus-auto collision, plaintiff Willie Dear secured a jury verdict of $5,000 against the Chicago Transit Authority (hereinafter "CTA") in the circuit court of Cook County. CTA appeals, alleging, among other things, prejudicial error by the trial court in admitting testimony given by a witness in an earlier trial of the same cause, by calling him *sua sponte* as the court's own witness and by allowing the transcript of that testimony to be read to the jury in his absence.

For the reasons hereinafter stated, we reverse and remand the cause for a new trial.

On February 24, 1973, at approximately 6:15 p.m., John Whitzell was driving a CTA bus south on Pulaski Road in Chicago, and approached Van Buren Street, which was one-way eastbound. The only traffic control device at that intersection was a stop sign for eastbound Van Buren Street traffic. There was a designated bus stop at the northwest corner of the intersection; however, since no passengers were waiting to enter or alight, Whitzell proceeded into the intersection without stopping, a version subject to conflicting evidence and impeachment. An automobile driven eastbound by Felix Arrington entered the intersection, collided with the bus, and was projected onto the sidewalk and into a cleaning establishment on the southwest corner. Plaintiff Willie Dear was a northbound pedestrian on the west side of Pulaski at the time of the collision and claimed that he was struck by the car after it came onto the sidewalk, was pushed into a store window, and sustained personal injuries.

At the trial, plaintiff called eight witnesses to testify on his behalf, only two of whom, plaintiff and another occurrence witness, Robert Thompson, gave testimony related to the issues in this appeal. Plaintiff saw Arrington's car stopped facing east on Van Buren, protruding into Pulaski by one or two feet. The right front of the southbound bus collided with the left front of the car. Upon attempted impeachment, he later testified that the right side of the bus near the front was involved. The automobile came upon the sidewalk and struck him, causing him to hit the store's glass window, which broke. He fell to the sidewalk, sustaining a leg injury and aggravating a previously existing shoulder condition. Dear had a pre-existing nervous condition for which he had been receiving treatment, which was also aggravated by the accident. He did not notify police regarding his injuries. His wife told him that she spoke to the bus driver about his injuries.

Thompson had also been a pedestrian at the time of the accident, walking south on the west side of Pulaski thirty to forty feet north of the north side of Van Buren. He saw Arrington's car "sitting out" on Van Buren one or two feet into Pulaski. The southbound bus approaching Van Buren pulled in as though it were going to stop for the bus stop, but did not. It swung right back out again hitting the front of the eastbound car and knocking it onto the southwest corner of the intersection, hitting plaintiff and knocking him into the corner glass store window on Pulaski. The bus went 30 or 40 feet south of the point of impact before it stopped. He and Arrington helped plaintiff up from the sidewalk and walked him to plaintiff's home about a block away. Plaintiff thereby concluded his case-in-chief.

Thereafter, defendant Felix Arrington was called to testify on behalf of CTA. He was driving his car eastbound on Van Buren Street and upon coming to the intersection saw the southbound bus coming into the intersection. He tried to stop, but instead of hitting the brake, he depressed the clutch and his automobile caught the rear of the right side of the bus near the wheel. The left front fender, left headlight, grill and bumper of his car were damaged and his car was pulled onto the sidewalk, coming into contact with a guardrail in front of the cleaning store at the southwest corner of the intersection. He denied that his vehicle struck a pedestrian and denied having spoken with plaintiff or having walked him home. He observed damage at the right side rear wheel area of the bus. On cross-examination, he testified that there was no damage to the right front of the bus or to its right front tire. He saw no stop sign at the corner of the intersection and no other traffic control signal although he conceded that one could have been there which escaped his notice. At the time he stepped on his clutch he was travelling 20 miles per hour and was 10 to 15 feet from Pulaski Road. He could not estimate the speed of the bus.

Arrington had not been called to testify at the previous trial of this cause by either party because he could not be located. His version of the accident was in conflict with that previously given by the bus driver, Whitzell, at the first trial, particularly with respect to the point of impact between the two vehicles. Whitzell had testified that the right side of the bus behind the front wheel was involved with Arrington's vehicle and had sustained damage there as a result, whereas Arrington testified that the right side of the bus at the rear wheel was involved. Whitzell also had testified at the previous trial that he did not stop at the Van Buren Street bus stop and was sought to be impeached by reason of a prior inconsistent written report given to CTA authorities to the effect that he did stop there.

A witness, Lester Smith, a CTA workmen's compensation claim adjuster, testified that Whitzell had been injured on duty on April 2, 1977, and had been on disability ever since. Plaintiff's counsel observed that such disability had not prevented Whitzell from testifying at the first trial in October 1977. CTA counsel thereafter revealed that Whitzell was suffering from the flu and he did not intend to require his presence at this second trial. Because of the inconsistencies between the versions given by Whitzell at the first trial and Arrington at the present trial, plaintiff's counsel deemed Whitzell's testimony crucial to his case, even though he had already rested. He expressed his desire to call him as plaintiff's own witness, and agreed to be bound by his testimony. CTA counsel advised the court that Whitzell had been subpoenaed by CTA; he was not asking that the subpoena be enforced in view of his physical condition.

A lengthy colloquy in camera between court and counsel ensued with

respect to the use of the transcript of testimony given by Whitzell at the previous trial in lieu of testimony by that witness. Authorities were cited in support of that procedure including Hunter, Trial Handbook for Illinois Lawyers, ch. LXVII, at 635-36 (4th ed. 1972), and *McInturff v. Insurance Co. of North America* (1910), 248 Ill. 92, 93 N.E. 369. CTA counsel objected to the use of the transcript by the opposite party for several reasons, one being the contradictory nature of the testimony given by which he did not wish to be bound. The trial court ruled that in justice the jury should have as much information as possible, stating "I will call him, in effect, as the Court's witness, and we will have some disinterested person read the transcript to the jury." Further discussion followed concerning the nature of Whitzell's illness, including the fact that he was not dying; he gets dizzy when he stands and would fall down. The trial court announced his intention to proceed. CTA then rested.

The trial court thereafter advised the jury that Whitzell was sick, unavailable for trial and the court ordered his testimony in the previous case to be read to them "as the Court's witness." The transcript thereafter was read to the jury. It was this procedure which forms the basis for CTA's assertion that prejudicial error was committed, first, in calling Whitzell as the court's witness and, second, in having had the transcript of previous testimony read to the jury without first having required a proper foundation to have been established therefor.

■■ The conditions under which a witness may be called as a court's witness, stated in *People v. Reddock* (1973), 13 Ill. App. 3d 296, 305, 300 N.E.2d 31, are:

> "* * * that his integrity or veracity is doubtful and that neither side desires to vouch for his testimony. Additionally, the testimony must relate to direct issues and be necessary in order to prevent a miscarriage of justice. [Citations.]"

Plaintiff admits on appeal that he expressly stated his willingness to be bound by Whitzell's testimony, and thereby concedes that it was improper for Whitzell to be called as the court's witness. He contends, however, that any error in this regard was not prejudicial and was waived by the CTA's failure to make a specific objection. We cannot agree.

■■ Although the designation of court's witness in civil cases is not without precedent, it should be used constrainedly. The reasons for this constrictive approach were well stated in *Crespo v. John Hancock Mutual Life Insurance Co.* (1976), 41 Ill. App. 3d 506, 517-18, 354 N.E.2d 381:

> "By way of contrast, in a civil action each side possesses differing interests in the controversy. Because of this disparity of interest, the parties often employ dissimilar trial strategies, tailored to their respective theories of the case, when adducing evidence and arguing their position to the trier of fact. Since trial tactics

often are not readily apparent until the close of evidence, it is important for the trial court to exercise judicial restraint in calling and examining witnesses; the court should not unnecessarily interfere with the trial strategies devised by counsel, and wide latitude should be extended to the parties in deciding in what posture their case should be presented to the fact finder. Moreover, in our adversary system of justice, the court should avoid giving the appearance to the jury of paying undue deference to the testimony of a particular witness which might result if the court called that witness. For these reasons, the practice of calling court's witnesses in civil litigation has been infrequently invoked.

      * * *

With this background of the court's witness rule in mind, in our opinion a trial court in a civil proceeding has the power and authority to call a court's witness upon motion of a party. But it is clear that the rule should be applied sparingly to permit such a witness to be called. Indeed, it is difficult to envision situations where the practice should be used, particularly in jury trials."

As *Crespo* indicates, use of this mechanism in civil cases before a jury is fraught with potential prejudice. The special emphasis given to testimony by informing the jury that it comes from a "court's witness" obviously commands deferential attention of the jury. In the present case the potential damage came to fruition by virtue of the failure of this unduly emphasized testimony to harmonize with evidence produced by CTA in Arrington's testimony. Such a procedure could not have failed to have made an important impression on the jury. Moreover, because there was only a transcript present, instead of a witness, it was impossible for CTA to examine or cross-examine the witness in order to attempt to clarify or explain the apparent inconsistencies of Whitzell's testimony when compared with that of Arrington who had not testified at the previous trial. With plaintiff's counsel standing ready to adopt Whitzell as his own witness, the trial court's *sua sponte* designation of him as the court's witness without proper foundation must, therefore, be viewed as prejudicial error requiring the reversal of this case for a new trial.

■ Plaintiff contends that this error was waived because no specific objection to such introduction of Whitzell's testimony was made at trial. The record reveals, however, that sufficient objection was made, the basis for which the court was aware as revealed in argument on this point in the post-trial motion, the court stating, "* * *, and so there was, generally, an objection to the procedure." Although a general objection may constitute an inadequate basis for reversal because it fails to alert the trial court to the nature of the objection (*Johnson v. Jackson* (1963), 43 Ill. App. 2d 251, 193 N.E.2d 485), this rule has no application where, as here, the grounds

for the objection were obvious. *Styblo v. McNeil* (1943), 317 Ill. App. 316, 45 N.E.2d 1011.

■■ ■ Turning next to the question of the admissibility of Whitzell's testimony as an exception to the exclusionary hearsay rule, such former testimony may be used under specified circumstantial conditions relating to availability of the witness. (*George v. Moorhead* (1948), 399 Ill. 497, 78 N.E.2d 216; *McInturff v. Insurance Co. of North America*; Trial Handbook for Illinois Lawyers.) In this context, counsel for CTA was asked whether he objected to the reading of this transcript to which he responded affirmatively. During the course of the ensuing argument, CTA referred the court to the lack of certain of those requisite conditions with respect to the missing witness, stating, for example, that he was not dead; that he was not being kept from testifying by CTA; that he was not out of the jurisdiction, but at home; and, that he was not permanently ill. Plaintiff concedes that Whitzell was not so ill as to believe that he might never be able to attend the trial, but argues without citation of authority that Whitzell's illness, though temporary in nature, satisfied the conditions set forth in *George v. Moorhead*. The ruling in that decision, however, is irreconcilable with this contention. The court there stated (399 Ill. 497, 500):

> "The general rule, which seems to be supported by all of the authorities, is that the evidence given by a witness in a previous action is relevant for the purpose of proving the matters stated in a subsequent proceeding, or in a later stage of the same proceeding, when the witness is dead, or is insane, *or is so ill that he will probably never be able to travel,* or is kept out of the way by the adverse party, and in some States when he is out of the jurisdiction of this court, provided there be identity of parties and issues in the former proceedings and the later." (Emphasis added.)

The court stated further (399 Ill. 497, 501):

> "The rule would, of course, exclude the former testimony of a witness still alive and capable of being subpoenaed as a witness, ⁕ ⁕ ⁕."

The potential abuse inherent in this procedure requires that it be followed only when absolutely essential rather than at the convenience of the court or parties. In the absence of any prerequisite circumstances prescribed in *Moorhead*, it was error for the transcript to be read to the jury in this case. Plaintiff nevertheless claims that any error in admitting such testimony was waived because of the active participation in presentation and reading part of the transcript to the jury by CTA counsel. We fail to see how cooperation of counsel with the court can be deemed a waiver once the court has concluded, as it did in this case, that the transcript would be presented by reading it to the jury.

The reading of the transcript of Whitzell's testimony given at the previous trial was, therefore, unauthorized, without foundation and, under the circumstances, prejudicial error.

In light of the disposition of this appeal, other points of alleged error need not be considered here. The judgment entered upon the jury verdict in the circuit court must be reversed and the cause remanded for a new trial.

Reversed and remanded.

STAMOS, P. J., and PERLIN, J., concur.