CURT BULLOCK BUILDERS, INC., Plaintiff-Appellee, v. H.S.S. DEVELOP-MENT, INC., *et al.*, Defendants-Appellants.

Fourth District    No. 4—93—0730

Opinion filed April 21, 1994.—Modified on denial of rehearing June 3, 1994.

Mark S. Goodwin, of Dougherty, Hofmann & Goodwin, of Danville, for appellants.

Kennith W. Blan, Jr., of Blan Law Offices, of Danville, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On August 3, 1988, plaintiff Curt Bullock Builders, Inc., brought suit in the circuit court of Vermilion County against various defendants seeking relief in regard to leasehold rights and alleged interference with its business relationships. After a jury trial, the court entered judgment on October 30, 1990, on a jury verdict awarding plaintiff $241,120 damages against defendants H.S.S. Development, Inc., Peoria Associates, an Illinois limited partnership, Herbert S. Saywitz, Theodore Sayers, and Mark Sayers. The award was made pursuant to counts which charged defendants with breach of a covenant in a lease creating an easement and tortious interference with a business relationship.

On appeal, this court affirmed the judgment to the extent it found defendants liable but reversed the award of damages and remanded for a new determination on that issue. (*Curt Bullock Builders, Inc. v. H.S.S. Development, Inc.* (1992), 225 Ill. App. 3d 9, 586 N.E.2d 1284.) On remand, the court, sitting at bench, heard evidence on the question of damages and, on June 8, 1993, entered an award in favor of plaintiff in the amount of $217,008. Defendants have appealed.

On appeal, defendants maintain the evidence did not support the

award and the circuit court erred (1) in admitting into evidence the transcript of the testimony of a witness at the first trial without a sufficient showing of the unavailability of that witness; (2) in permitting plaintiff's president and chief witness, Randy Bullock, to testify as to opinions concerning damages; and (3) in striking defendants' affirmative defense of failure to mitigate damages and preventing defendants from introducing evidence on that issue. We were originally concerned with the sufficiency of the record to show the unavailability of the former witness, a transcript of whose former testimony was used, but are now satisfied in that regard. We find no reversible error in regard to the points raised and affirm.

Defendants were the owners of real estate in the city of Peoria and developers of a shopping center on that land. Plaintiff leased some of that land from them and operated a business of selling garages from that site. In *Bullock* we held that through a complicated series of transactions, plaintiff had acquired an easement for access to University Avenue, an important street in that city, and upheld an award of damages to plaintiff for defendants' conduct in destroying that access for a period of time. We also upheld the determination that defendants had tortiously interfered with plaintiff's business relationship. The parties do not dispute that plaintiff lost some sales because of defendants' conduct. The factual matters at issue on the second trial concerned the number of sales which plaintiff lost and the amount of profits which would have been lost as a result. In *Bullock* we set aside the award because Curt Bullock had testified to an opinion as to the number of sales lost while basing his opinion upon information not meeting the requirements of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 193, 417 N.E.2d 1322, 1326.

■ We consider first the question of whether the evidence at the retrial supported the damages awarded. As we did in *Bullock* (225 Ill. App. 3d at 18, 586 N.E.2d at 1291), we again state that we consider the following language to set forth the proper standard for us to apply in determining whether a lost profits award is supported by the evidence:

" 'It is perhaps true that absolute certainty as to the amount of loss or damage in such cases [involving lost profits] is unattainable, but that is not required to justify a recovery. All the law requires is that it be approximated by competent proof. That proof of the exact amount of loss is impossible will not justify refusing compensation. If that were the law, contracts of the kind here involved could be violated with impunity. All the law requires in cases of this character is that the evidence shall with a fair degree of probability tend to establish a basis for the assessment of dam-

ages.' " *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 147-48, 281 N.E.2d 323, 325-26, quoting *Barnett v. Caldwell Furniture Co.* (1917), 277 Ill. 286, 289, 115 N.E. 389, 390.

Bullock first testified that in 1988, 100 sales would have been made were it not for defendants' actions. He based this estimate on a rule of thumb in the business that 30% of a firm's garage sales would be made in the second quarter of a year. According to Bullock, plaintiff sold 30 garages in the second quarter of 1988, which ended about the time access was shut off. Upon this basis, plaintiff should have made 100 sales in 1988, but only made 60, thus losing 40 sales. John Moran, an accountant, testifying on behalf of defendants, projected a loss of only 17 sales for 1988. His opinion was based upon an analysis of only the sales by plaintiff at Peoria, which were to customers within a 30-mile radius of Peoria. As to 1988 lost sales, the circuit court was free to choose Bullock's analysis and projection over that of Moran.

Bullock's projection for the years after 1988 was completely speculative. He concluded that the Peoria site would have sold 125 garages in each year after 1989 because a manager had returned to run the Peoria operation who had sold 200 garages a year in the 1970's and statistics indicated that the business conditions in the Peoria area for the years 1989 through 1991 were just as good in those years as in the 1970's. However, the defendants do not dispute that some additional sales were lost in 1989 and logically some sales would be lost in future years. The circuit court could have found that a substantial number of sales were lost as a result of defendants' conduct in years after 1988.

Testimony was presented that Bullock's average profit per garage sale in 1988 and 1989 was $1,507. The court could have accepted that testimony and believed that much the same profit margin would have existed in 1990 and 1991. On that basis, the award of $217,008 would be based upon approximately 145 lost sales. The court could have believed Curt Bullock's testimony that 40 sales were lost in 1988 and some 35 sales per year were lost for the next three years. This determination by the court was substantially less than the damages of $375,243 calculated by Curt Bullock. The award is close to the maximum which could be supported by the evidence but it is within the range of reasonableness.

The evidence that plaintiff's profits per sale of a garage in 1988 and 1989 were $1,507 came from a transcript of the testimony of Mike Fox, an accountant called by plaintiff, at the first trial. Defendants' contention that the court erred in considering this evidence has two prongs. One is that any unavailability of Fox was not

shown by affidavit or testimony. The other is that regardless of the method of proof, the facts relied upon did not create the type of unavailability required as a foundation for use of prior testimony of the witness involved.

As the issue of unavailability was part of the foundation necessary for the admission of the transcript, we agree with defendants that they were entitled to have any claim of unavailability of the witness supported by affidavit or testimony. "In many preliminary stages prior to trial not involving the resolution of a disputed issue going to the merits of the case, the procedure either by statute or by established practice is to supply evidence by affidavit." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.8, at 409 (5th ed. 1990).) As we have indicated we were previously concerned with the sufficiency of the method of proof in this respect but defendants do not deny that when ultimately permitting plaintiff to place in evidence the transcript of Fox's prior testimony, the circuit court had before it an affidavit dated May 6, 1993, and in the words and figures as follows:

"Comes now Carl J. Belber, M.D., F.A.C.S., and being first duly sworn on this oath, deposes and says and follows:

1. That affiant has been treating Michael J. Fox of R.R.#2, Box 160, Danville, in affiant's position as a neurological surgeon at Carle Clinic Association, Urbana.

2. That Mr. Fox suffered a subarachnoid hemorrhage from a ruptured aneurysm on January 18, 1993.

3. That I performed a craniotomy on Mr. Fox thirty-six hours after the hemorrhage.

4. That the operative procedure was very prolonged and difficult.

5. That although the aneurysm was successfully closed, Mr. Fox has had a prolonged convalescence, and at the date of this affidavit is still undergoing rehabilitative therapy.

6. That Mr. Fox has suffered and continues to suffer critical short term memory loss.

7. That there is almost certainly no chance that Mr. Fox will be able to testify in any sort of capacity as an expert witness by May 10, 1993.

8. That whether Mr. Fox will be able to so function at any time in the future is problematic.

9. That his prognosis for return to his prior occupational function is at the date hereof uncertain.

FURTHER AFFIANT SAYETH NOT."

No conflicting affidavits were filed. If such has been filed or if the court otherwise deemed that in-court testimony was desirable on the question of Fox's unavailability, the court, in its discretion, could require such testimony. 735 ILCS 5/2—1103(b) (West 1992).

■ The precedent of prior decisions does not give a clear picture as to the degree of unavailability of a witness that must be shown to establish a foundation for use of the prior testimony. In *George v. Moorhead* (1948), 399 Ill. 497, 78 N.E.2d 216, the trial court hearing a will contest refused to permit introduction of transcripts of the testimony of several witnesses at the hearing to determine heirship in the probate proceedings. The supreme court upheld the ruling stating:

> "The general rule, which seems to be supported by all of the authorities, is that the evidence given by a witness in a previous action is relevant for the purpose of proving the matters stated in a subsequent proceeding, or in a later stage of the same proceeding, when the witness is dead, or is insane, *or is so ill that he will probably never be able to travel*, or is kept out of the way by the adverse party, and in some States when he is out of the jurisdiction of the court, provided there be identity of parties and issues in the former proceeding and the later. (Greenleaf on Evidence, sec. 163; Elliott on Evidence, vol. I, sec. 495; Stephen's Dig. of Evidence, p. 194; Ency of Evidence, vol. 5, p. 895 *et seq.*; Jones on Evidence, vol. 2, secs. 336-342.) The rule as to admissibility is the same whether the basis of the offer be that the former witness is dead, or insane, or *otherwise comes within the exceptions*, so cases involving any of such grounds are equally pertinent, whether it be the precise one urged in this case." (Emphasis added.) *George*, 399 Ill. at 500, 78 N.E.2d at 217-18.

The *George* court also explained that for former testimony to be admissible both actions must involve the same issues between the same parties or their privies. The supreme court noted that the record there failed to show that (1) the proceedings where the testimony was given involved the same issues as the proceedings where the transcripts were offered, or (2) the witnesses were "dead or insane, or kept out of the way by the opposite party." (*George*, 399 Ill. at 503, 78 N.E.2d at 219.) Here, we see no substantial problem in regard to the same parties and the same issues being involved. Defendants contend that the issues are different because plaintiff, on remand, contended he was entitled to loss of sales after 1989, which was the last year concerning which Fox testified. That additional request does not change the relevance of Fox's testimony to sales lost in 1988 and 1989. The language which concerns us is the stated requirement that illness makes a witness unavailable only if the illness is so severe that the witness "will probably never be able to travel."

More recently, in *Dear v. Chicago Transit Authority* (1979), 72 Ill. App. 3d 729, 391 N.E.2d 119, the appellate court held that the circuit court had committed reversible error in permitting the use of a

transcript of the testimony of a witness at a former trial when the claim of unavailability of the witness was based upon the fact he was ill and at home. Here, according to the physician's letter presented, Fox had undergone brain surgery after a subarachnoid hemorrhage from a ruptured aneurysm and would clearly be unable to testify for well beyond a month. The severity of Fox's infirmity was indicated to be much greater than that of the witness in *Dear* but that opinion restated the language of *George* requiring the injury to the witness to be very permanent.

The stated rule that to constitute unavailability because of illness, the illness must be so severe that the witness "will probably never be able to travel" has not, to our knowledge, been applied under circumstances where the person has an illness so severe that the witness could not be available for a reasonable trial date or submit to an evidence deposition. We note that a leading authority on Illinois evidence states that "[d]eath and existing physical or mental illness or infirmity *at the time of trial* are grounds for finding of unavailability" (emphasis added) and refers to Federal Rule of Evidence 804(a)(4) (Fed. R. Evid. 804(a)(4)). (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 804.1, at 684 (5th ed. 1990).) The text further states that in criminal cases where confrontation rights exist a continuance may be more desirable than use of prior testimony.

Federal Rule 804(a)(4) includes within the definition of unavailability of a witness for purposes of use of prior testimony the fact that the witness "[i]s unable to be present or to testify at the hearing because of death or *then existing physical or mental illness or infirmity.*" (Emphasis added.) (Fed. R. Evid. 804(a)(4).) In considering the Rule 804 definition of "unavailability" in connection with use of videotaped depositions of minor victims in indecent liberties criminal prosecution, the supreme court stated "[w]hile we do not necessarily adopt Rule 804 as an exhaustive definition of 'unavailable' under Illinois law, we do embrace the *general principles reflected therein.*" (Emphasis added.) (*People v. Johnson* (1987), 118 Ill. 2d 501, 509, 517 N.E.2d 1070, 1074.) One general principle of Rule 804's definition of unavailability would seem to be that when physical condition is involved, the focus is upon the physical condition of the witness at the time of likely trial and the condition need not be permanent.

■ If the record had shown that Fox would have been available to testify after a reasonable continuance, the circuit court should not have permitted use of the transcript. However, the uncontested affidavit clearly stated to the contrary. The circuit court was fully within its discretion in permitting use of the transcript.

■ Defendants' complaint in regard to Randy Bullock's opinion testimony involving lost sales concerned alleged violations of Supreme Court Rule 220 (134 Ill. 2d R. 220), which were raised in defendants' *in limine* motion. The only aspect of this issue which was reserved by objection when the testimony was offered (see *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 5, 422 N.E.2d 241, 244) was Bullock's testimony concerning the average profit per garage sold for the period after 1989. The testimony of Fox covered only the years 1988 and 1989. We do not find that any reversible error occurred.

■ The substance of the affirmative defense which defendants were denied leave to file prior to the hearing to determine damages was that prior to the obstruction of the easement to University Avenue, defendant Saywitz offered plaintiff a better location in the shopping center without costs. The court refused the introduction of the defense because the fact that the alleged offer occurred prior to the wrongful action of the defendants seemed to relate to the issue of liability rather than damages. Our concern is slightly different but it also concerns the fact that the offer was made before defendants' misconduct occurred. We are unaware of a case where one intending to breach a contract or commit a tort can, prior to doing so, go to the victim and offer to take action which would mitigate the damages and thus require the victim to accept the offer or be charged with failure to mitigate the damages. We find no error in the circuit court's rejection of the affirmative defense in regard to mitigation.

We affirm the judgment on appeal.

Affirmed.

KNECHT and LUND, JJ., concur.